v. Mr. Eisenberg, are we going to need to do both these appeals? I believe that we are, your honor. May it please the Court, my name is David Eisenberg and I represent Northrop Grumman in this appeal. The issue is whether a contractor must disclose in a CDA claim letter that it has received pre-performance financing and that it has agreed to remit any performance payment from the government to the finance company. Mr. Eisenberg, can I just ask you a side question at the beginning, which is, this all could have been resolved pretty easily, right, if after the Court of Claims ruled you went back and refiled the case before the contracting officer in the way that the CFP said it should have been done, right? I mean, there was no statute of limitations problem or anything with this. I mean, I'm just wondering as a practical matter why this is being pursued. Well, as a practical matter, your honor, quite frankly there was quite a bit of interest that had accrued over the four-year period that Northrop Grumman was litigating the first claim and if the first claim were dismissed and Northrop Grumman only proceeded with the second claim, it would have given up all of the interest to which it's entitled if the first claim is found to have been a valid claim. Okay. And further, it's Northrop Grumman's position that the first claim was a valid claim and it's also our position that we shouldn't be put to the choice. That's fair enough. You have it in timeout. I just wondered what, yeah, but you could have, there would have been no statute of limitations bar. That's correct. It's our position the statute of limitations expired the end of September of 2011 and the claim was submitted in July of 2011 and the dismissal was in June of 2011. So with respect to the claim, the statute clearly says that a contractor must certify that the claim is made in good faith, that the supporting data are correct based on their knowledge and belief. And it goes on, how can, if you leave out information such as other potential parties that are involved in the claim, then how can you say that the claim was made in good faith or that all the supporting data are accurate and complete and isn't the lack of that type of information negate the legal meaning of claim under the statute? It would be Northrop Grumman's position that other parties are not involved in the claim. That as Northrop Grumman reads the FAR, the FAR provides basically that a claim is something that arises under or relates to the contract, suggesting that it's performance-based. Nothing about pre-performance financing is performance-based and therefore no claim arises based on the financing. Only one party performed under this contract. There's only one party to the, besides the government, to this contract and that's Northrop Grumman. The contract was entered into with Northrop Grumman. Correct. And the fact that you're not performing under the contract, you don't think that that's performance-related? I don't believe that it is performance under the contract, your honor. Pre-performance financing simply allowed in this particular case. The cost of the software up front was approximately 2.9 million dollars. One party had to wait four years for those payments, 900,000 a year. Northrop Grumman chose not to wait those four years for the payments and that's why it obtained financing. But that's not part of Northrop Grumman's performance under the contract and that also shouldn't negate the ability of Northrop Grumman, who's the only party who performed under the contract, the only party in privity with the government, from bringing a claim. And I would also suggest that... So if the government wants to make a performance argument in defense of a case and yet the party before them is not the party that's performing under the contract, aren't they missing somebody? The party who did perform was Northrop Grumman and they are before the court. In addition, your honor, I would point to the Anti-Assignment Act as instructive on this particular issue. The Anti-Assignment Act specifically provides for an exception with respect to financing. And in that circumstance, both the Assignment and Claims Act and the Anti-Assignment Act provide that it's the AFNI, the finance company, who files written notice of the assignment and a copy of the assignment with the contracting official. I would perceive that it's not unusual to have this kind of financing arrangement, right? That would be correct. And in fact, the Anti-Assignments Act is kind of for that opportunity to get financing from other sources, right? Correct. And the Anti-Assignment Act is for the benefit... The provision is for the benefit of the AFNI, for the benefit of the assignment, the financing company, because it's the finance... So it would be pretty strange to construe that against the contractor to whom it's supposed to be a benefit, right? Correct. Can I just... I'm a little confused by the terminology. Is it Northrop's position that if it were a pass-through claim or a sponsored claim, the CF, the Court of Federal Claims would have been right, but that this was not a pass-through or sponsored claim? Or is it your position that it doesn't matter in any of that, whether you call it sponsored or pass-through, you still shouldn't have been obligated to just make the disclosure to the contracting officer? It's our position, Northrop Grumman's position, that it's not a sponsored or pass-through claim. That the only claim that exists is the claim of Northrop Grumman, the party who performed under the contract, and that's based on the FAR in terms of defining a claim. In addition, it's our position based on the intent behind these statutes, the CDA and the... Sponsoring is a bit of a bad word, though, isn't it? It is. And unfortunately, it was used in the assignment document, but ultimately, it's this court's determination as to what a claim is. Just because private parties use the term sponsored claim in their documents doesn't make it a claim under the CDA. It may be a claim in a different sense that the finance company has against the contractor, but it doesn't make it a claim under the CDA. Ultimately, it's for this court's... Speaking of where it says very clearly, the claim stays with you, right? That's correct. But this case isn't about whether the claim stays with you or whether you have the right to seek financing under the terms of the contract. This case is what you need to correct. And for that, I would actually go further in the CDA than your Honor actually read to the state. We're talking about the issue of damages and to whom the money should be paid. And the CDA says the next clause is that the letter accurately reflects the contract adjustment for which the contractor believes the government is liable. And that's exactly what Northrop Grumman did in this case. And that's exactly what the Court of Federal Claims found wrong, unfortunately, with the claim letter. The Court of Federal Claims states that Northrop Grumman's claim was drafted carefully to avoid mentioning this matter, the financing, consistently framing its various requests in terms of what the government was obliged to pay rather than what Northrop, in reality, the finance company, was owed. And the Court of Federal Claims goes on that the issue with the claim letter is that Northrop shifted the focus to what defendant owes rather than discussing to whom the damages are owed. It would be that the CDA focuses on what the government owes in the opinion of the contractor. And that's exactly what Northrop Grumman did in this case. And while these are waiver of sovereign immunity statutes that are strictly construed, Northrop Grumman followed the plain language of the statute. I think I appreciate the argument you're making here today and I have some sympathy for it. But the question, the problem I have is, assuming you're right in terms of the specific assignment here and the facts in this case, that there was no whatever sponsorship is or pass-through that would even raise questions with respect to the case law and the FAR requirements. That's something that we determine after the fact. We know that because we've looked at your assignment here and we've concluded that. But what about circumstances where there were some implications with regard to sponsored claims or pass-through claims that would at least raise questions with respect to the obligations? We only know that once we've looked at it. So I would think the argument of the government would be, yes, you may be right here that there's no problem with respect to the assignment. But we only know that because we know it exists and we get a chance to look at it and review it and the government gets a chance to see whether or not it has any challenge. Do you understand what I'm saying? I do understand, Your Honor. And I would go back to the fact that this is pre-performance financing. So pre-performance financing can never give rise to the claims, to those type arguments, the thought that there could be multiple parties suing the government or that the government needs to know about the pre-performance financing because, again, the only party performing under the contract is Northrop Grumman. The issues with Severin that are raised by the court below, those all have to do with either other parties performing, a subcontractor, which is an entirely different situation because in a subcontractor-contractor relationship, the issue is whether the contractor in the performance of its obligation somehow becomes obligated to the subcontractor who also performed. There's no issue of that in connection with pre-performance financing. And the assignment cases, also quoted by the court below, all involve either the assignee bringing a claim directly, which is not the case here, or post-performance issues or post-performance. So the rule you're at, so I mean, you know, this court has to kind of draw the lines here in terms of what the rules are. So the rule that you're advocating is with respect to pre-performance financing, that's not something that the contractors obligated to disclose at the CO stage. That would be our position, and again, I would suggest that the Anti-Assignment Act is consistent with that because it's not the contractor who needs to disclose the financing to get the benefit of the exception in the Anti-Assignment Act. It's the finance company, both statute state, the assignee, the finance company is the one who files the written notice of assignment and the copy of the assignment. And in terms of what's contained in those documents, there's no indication what's contained in those documents. The assignment in this case may actually contain more information that is contained in a simple assignment that simply says, contractor assigns all the payments it receives to the finance company. But it shouldn't harm the contractor because the finance company elects not to be paid directly from the government, and the finance company is the one who elects to take the risk that the contractor will actually pay it if it receives money from the government. That should not harm the contractor and should not be something that the contractor, the contractor under the Anti-Assignment Act is not the party required to disclose that information to the contracting officer. And the contractor in those documents should proceed with its claim. It doesn't impact the contractor's damages because it's the contractor who performed, and the contractor who proves the case, and the contractor who proves that the contractor was damaged. Only after the contractor does that does the government, based on the Anti-Assignment Act, make a payment instead of to the contractor, it makes the payment to the finance company. Does the Severn Doctrine apply here? It's our position that the Severn Doctrine does not apply for the reason that I stated, that pre-performance financing never falls within the category of cases covered by the Severn Doctrine. Does this save you rebuttal time, Mr. Eisenberg? Yes, I would like to. Thank you, Adam. Adam? Why isn't BeaconWare on all fours and says that Tatum's claim was always Tatum's claim and therefore they had nothing to notify the contracting officer of? Everything else was irrelevant. Well, Your Honor, first, one issue with BeaconWare that we would like to address is that the financial jurisdictional defect was neither noted nor discussed by the court, so the decision can't stand for the proposition that there was no jurisdictional issue. What's the jurisdictional issue? That a sponsor... If it's their claim, they have nothing to notify of, except that they have a claim, which they did. In this case... And BeaconWare says it's their claim, so where's the issue here? In this case, the plaintiff revealed in its pretrial brief and also in its response to our pretrial brief that Northrop Grumman is sponsoring a claim on behalf of citizens. It never transferred the claim to citizens. It just said it'll bring the suit if necessary. The language of sponsorship is meaningful. It's an operative fact... It's right back to BeaconWare. That says it's their claim. Sponsoring was an unfortunate word. We all agree with that. But you're bright enough to see that BeaconWare governs. It's their claim. They notified of their claim. Why are we here? To go back to BeaconWare, again, the jurisdictional defect was not noted or discussed. The decision can't stand for the proposition that one doesn't exist under the Supreme Court's Hagan's decision and Arizona tuition organization be win. So you'd like the government here to get a windfall for their breach of contract? No, Your Honor. We would like the plaintiff to not be able to bring a sponsored claim on behalf of an assignee, which the court has never recognized. The only claim is Northrop's claim. BeaconWare tells us that. And BeaconWare didn't have to tell us that. That was true before. There's no other claim. So where's the issue? Well, the court of federal claims found that there was a sponsorship and that was a fact and an operative fact that was important to the contracting officer. The court would have to review that decision for clear error and whether there's a – whether it has left the definite firm conviction that the trial court – as opposed to a subject matter jurisdiction decision. The government – the court was presented with a final determination. And the claim was made. Notice was submitted to the contracting officer. And everything seems under the statute to be set out. They certified they're doing it in good faith. And it seems to me that if you get into the argument about there being a financing arm involved in the case, then you begin to argue the merits. And you can't argue the merits unless you have the jurisdiction. Your Honor, the factual issues that underlie jurisdiction are something that the trial court did need to get into and to determine whether the contracting officer was presented with all the operative facts necessary for his decision. And as the court found, Northrop had created a new claim that was distinctly different from the one – How does it matter whether – is – they went out and got financing in order to be able to do the work. So how – why does that matter to the government that they went out and got financing? Or where did the revenue – you have a big company in front of you who has many sources of revenue. Why does it matter how it's financially supporting its performance? Well, Your Honor, the Anti-Assignment Act does require not only that there be – it's not only there to prevent possible multiple claims, but also to make a necessary investigation of alleged assignments in the Supreme Court's McKenzie decision. So in this case, without that type of information about these assignments, the government couldn't know for sure who was going to be bringing this type of claim. In addition, the financing company exception in the Anti-Assignment Act that Northrop has been relying on, it doesn't in fact apply here. ESCGov, as is pointed out on page A199 of the record, is not a financing company. It's a reseller of software. And it certainly couldn't fall within that exception, even if there had been notifications. Give me an example how in this case there exists a potential or there exists a potential for multiple claims being brought against the government. Well, Your Honor, there definitely could be a situation in which citizens could itself seek damages. And in fact, in this case, the way it's been described and – How? From the government? Sorry. Yeah, how? That would fly in the face of the Severan Doctrine and everything. And it's not their claim. It's Northrop's claim. If citizens wanted to – They couldn't bring a claim. That would be as frivolous a case as I can imagine. Well, that is the way it was described in the briefing, and that's the way it's described in the Purchase and Assignment Agreement, that Northrop will sponsor a claim on behalf of citizens for citizens' damages. How about Colonial Navigation, a case even before Beaconware, which says even if they had attempted to assign the claim to citizens, that would have been invalid. The claim would stay with Northrop. That's the only person the government has contracted with. It's the only one who can have the claim. Well, one issue here, again, is that – Even if they had tried to do it, they could not have done it. Well, that's, again, something that the contracting officer should have had the first opportunity under his statutorily assigned role to – It's the law. The contracting officer is supposed to know the law. This is 101 of government contracts. Even if the contracting officer would have known the law and made the same decision, that's not the issue here. The contracting officer isn't, as the trial court said, a way station on the way to the court. The CDA is a waiver of sovereign immunity. It must be strictly construed, and there are purposes the contracting officer's review. He needs to be able to assign issues for later litigation. If this claim had been presented in this form to the contracting officer, he would have had that opportunity to identify the issues for the later litigation and potentially resolved any claims at the contracting officer level. Whether the court might disagree and think there's no purpose in going forward, there can't be a post hoc no harm, no foul analysis, as the trial court found. The Anti-Assignments Act says clearly citizens could not bring a claim. I'm just having a hard time understanding any aspect of your argument. If citizens could not bring a claim, that still didn't deprive the contracting officer of the opportunity to make that decision himself. Why does he care about how Northrop does its business? It funds, that's what the Anti-Assignment Act does. It gives Northrop a lot of leeway to seek financing other than from its own bank. Although Northrop has agreed that this was an invalid assignment and it was not ever notified. It doesn't change whose claim it is. It's their claim. It has to be their claim. And they notified the contracting officer of every aspect that they needed to notify, right? No, Your Honor. The certification, for example, Northrop said it's perfectly fine because it states this is the amount we believe the government is liable for. But in fact, the court noted in Transamerica and the lower court in AAB Ventures that the proof of claim by a prime on behalf on another party's benefit, in that case a subcontractor, is distinct from the prime's own. So even though the Severn Doctrine doesn't apply, what Northrop is trying to do here is use something like the Severn Doctrine to sponsor a claim. If it were to do so, the contracting officer would need to figure out whether Northrop could be liable to citizens. How can we have a situation where we say that Northrop is sponsoring a claim when there's nothing here that shows that citizens believe that it has a claim? Well, citizens... I can see how a subcontractor would have a claim, but a financing entity? Well, Your Honor, citizens, it's listed as the real party in interest in this case in the filing made with this court. It's described in the purchase and assignment agreement and the equipment schedule number one. It states that the assignee is the one who's going to provide the litigation backing. It's going to only bring it in the name of Northrop Grumman. That sounds exactly like a sponsored claim as a subcontractor would attempt to bring simply using the name of the contractor to have a pass-through claim. And we have noted, though, that it is the case that there shouldn't be a type of claim where a contractor is seeking an assignee's damages and that the assignment itself doesn't give rise to a claim against the government. Northrop has asserted in its reply, and also here, that this was a loan or financing to Northrop Grumman, but the record shows that ESCGov basically paid for a payment stream. And ESCGov is the one that paid for the software, and Northrop Grumman seems to have paid nothing and had no liability, according to the purchase and assignment agreement to ESCGov. In this case, and it has basically said it's already been paid in full, we're unclear whether there could be any damages to Northrop Grumman, which is why it seems that Citizens is the one. Now, that I understand that part. But that's what I was saying before. Are we talking now about the merits? Are we talking about, to get to the merits, you have to have the valid claim and you have to have jurisdiction. The question of damages, we're merely trying to explain why this would be Citizens' claim, why it makes sense that it was brought as a sponsored claim. But as for the issue of the sponsorship, again, it's something that the court has found is important to bring to the contracting officer's attention. He needs to know whether he's dealing with damages suffered by the contractor itself or some third party. In general, the court has not allowed parties to merely accommodate another person who is damaged, letting that other person used for the purposes of litigation, the name of the plaintiff. That's from Severance. That's what Citizens is doing here by its description in the real party interest statement from its purchase and assignment agreement and, in addition, its own statements in its pretrial brief and in its response to our pretrial brief. For these reasons, we request that the court affirm the decision of the trial court. Mr. Annam? Mr. Eisenberg? Just briefly, Your Honors. First of all, if this information were at all relevant and Northrop Grumman could not suffer damages as a result of financing, then the government would clearly be getting something for nothing. And that can't be relevant to the contracting officer to know that there's financing. If the only result is that the government would be getting something for nothing. There can't be any relevance to this financing and it can't possibly reduce the damages that are associated with the performance of Northrop Grumman under the claim. The finance company, quite simply, does not have a claim. And with respect to the real party in interest, that was simply, given the issues that have been raised in this case, it didn't indicate that Citizens was the real party in interest. The indication was simply that I represent that party as well, so that the court was aware that I did have that representation. It's our position that beacon wear is on all fours and that these statutes are strictly construed and that when they're strictly construed, Northrop Grumman complied with the language of the CDA, particularly the relevant paragraph about how to phrase the damages in its claim letter. And that, coupled with the Anti-Assignment Act and the benefits to the finance company to the Anti-Assignment Act are reasons why that information does not have to be disclosed and can't impact the performance claim of the contractor. And finally, as this court noted in Transamerica, which was just cited by the government, this court will not require contractors to do more than to comply as fully and reasonably as possible with the statutory requirements of this CDA when this court has definitively stated that certain magic words need not be used and that the intent of the claim governs. The intent of the claim is that Northrop Grumman performed and the government breached the contract. All of that information is disclosed in the claim letter. Thank you. Thank you, Mr. Eisenberg.